**In the Interest of T. M. M., a child.**

**Thomas L. ZIMNEY, Assistant State's Attorney, Petitioner and Appellee,**

v.

**L. M. M., Respondent and Appellant,**

**and**

**D. A. M., Respondent.**

Civ. No. 9430.

Supreme Court of North Dakota.

July 6, 1978.

Rehearing Denied July 26, 1978.

Thomas L. Zimney, Special Asst. State's Atty., Grand Forks, pro se as petitioner and appellee on behalf of State of North Dakota.

Dwight F. Kalash, Grand Forks, guardian ad litem of the child, T. M. M.

Marie M. Feidler, Grand Forks, for respondent and appellant L. M. M.

VOGEL, Justice.

This is an appeal by the natural mother, L. M. M., from a determination of deprivation pursuant to Chapter 27–20, North Dakota Century Code, by the Juvenile Court of Grand Forks County, which entered a judgment placing the minor child, T. M. M., with the natural father, D. A. M.

L. M. M. and D. A. M. were divorced on August 3, 1974, and custody of T. M. M. was granted to D. A. M. On February 2, 1977, L. M. M.'s motion to modify the divorce decree was heard, and the court granted custody of T. M. M. to L. M. M. A petition alleging deprivation of T. M. M. was filed on June 2, 1977, naming both L. M. M. and D. A. M. as respondents.

Section 27–20–21 requires that the petition shall set forth "The facts which bring the child within the jurisdiction of the court, . . ." The only attempt to comply with this requirement was a verbatim recital of the statutory definition of "deprived child" [Sec. 27–20–02, subsec. 5–a, N.D.C.C.] stating that the child

". . . is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his [*sic*] physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of his [*sic*] parents, guardian, or other custodian; . . ."

A hearing on the petition set for June 21, 1977, was continued to July 18, 1977, at the request of D. A. M.'s counsel, apparently to permit D. A. M. to schedule a motion to modify the divorce decree. The two hearings were then postponed to August 29, 1977. The court found T. M. M. to be deprived and ordered legal custody of T. M. M. to be continued in the Grand Forks County Social Service Center for one year with physical custody granted to D. A. M. It is from this judgment that L. M. M. appeals and presents the following issues for determination:

1. Whether the deprivation hearing was in fact combined with a hearing to modify the divorce decree, thereby constituting reversible error.

2. Whether the introduction of a substantial amount of dispositional evidence prior to a finding of deprivation adversely affects the custodial parent's right to a hearing on deprivation and therefore warrants dismissal of the petition.

3. Whether the evidence was legally sufficient to support a finding of deprivation.

■ Our scope of review in cases arising under Chapter 27–20, N.D.C.C., is similar to trial de novo and is not subject to the "clearly erroneous" rule. Rule 52(a), N.D. R.Civ.P.; *In Interest of M. L.*, 239 N.W.2d 289 (N.D.1976); *Interest of R. W. B.*, 241 N.W.2d 546 (N.D.1976); *Bjerke v. D. T.*, 248 N.W.2d 808 (N.D.1976). Section 27–20–56, subsection 1, dictates that we review this case "upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court."

I

Section 27–20–24, subsection 1, deals specifically with the first issue in setting forth the procedure for conducting deprivation hearings. It provides:

"1. Hearings under this chapter shall be conducted by the court without a jury, in an informal but orderly manner, and *separately from other proceedings not included in section 27–20–03*." [Emphasis added.]

Although North Dakota adopted substantially all of the Uniform Juvenile Court Act as approved by the National Conference of Commissioners on Uniform State Laws, it chose to depart from that Uniform Act in some instances. Of particular importance in this case is North Dakota's adoption of Section 27–20–03, which sets forth the jurisdiction of the juvenile court. North Dakota chose not to include within the jurisdiction of the juvenile court "proceedings to determine the custody or appoint a guardian of the person of a child," although the quoted words were included in the Juvenile Court Act adopted by the National Conference of Commissioners on Uniform State Laws. Such a departure indicates that the North Dakota Legislature specifically intended that divorce-related custody proceedings would not be within the jurisdiction of the juvenile court, and Section 27–20–24, subsection 1, makes it clear that hearings conducted to determine whether a child is deprived must be conducted sepa-

rately from divorce-related custody hearings.

In prior opinions we have discussed the inappropriateness of a deprivation hearing as a forum for determining divorce-related custody matters. In the case of *In Interest of M. L., supra*, 239 N.W.2d at 295, we said that the differences between the two types of hearings are crucial, and, at 296, that "we believe it was essential to restrict the deprivation hearing to matters appropriate to that kind of hearing, and it was inappropriate to treat it as the equivalent of a divorce custody proceeding." See also *Kottsick v. Carlson*, 241 N.W.2d 842 (N.D. 1976).

The question, then, is whether the hearing held in this case was in effect a combination of a deprivation hearing and a hearing on a motion to modify the divorce decree. Both matters were scheduled for hearing at the same time on August 29, 1977. Prior to the commencement of the hearing, the parties met in the judge's chambers to discuss procedural matters and apparently entered into an oral stipulation which was not transcribed and therefore is not a part of the record. The appellant asserts that it was stipulated that evidence introduced at the deprivation hearing could be considered as evidence in the hearing on the motion to modify the divorce decree, therefore obviating the necessity of repeating certain testimony. The appellee asserts that it was stipulated that testimony could be taken during the course of the deprivation hearing which might be more applicable to the motion to modify the divorce decree. Reference to this stipulation was made by the judge during the hearing when he stated that "counsel representing the parties in a divorce case have agreed that the evidence received here is to be considered controlling on the motion too." We interpret this statement by the judge to mean that it was stipulated that evidence properly admitted in the deprivation hearing would be considered as evidence in the divorce custody hearing without having to introduce that same evidence twice. We do not interpret the judge's remark to mean that the deprivation hearing would be open to introduce evidence properly belonging only in the divorce custody proceeding.

In reviewing the entire record and considering all the evidence we find that the procedure followed was not in compliance with the statute. The record indicates that the deprivation hearing was intermingled with the hearing on the motion to modify the divorce decree to such an extent as to constitute reversible error. Much of the confusion during the hearing probably was due to the different interpretations of the above-mentioned stipulation by the attorneys and the court. A few examples will demonstrate this confusion. The court, early in the proceeding and prior to any finding of deprivation, commented: "That's the reason we're in court, because these people are fighting for custody." Later, the court said:

> "I've got to make this determination as to what is in the best interest of the child. I have three options. I can dismiss the deprivation hearing and I can deny the [motion] for modification, or I can grant—or I can find deprivation and grant the motion for modification or continue the custody with the Grand Forks County Social Service Center and have the child's physical custody here or there under supervision, but there has to be one decision made."

The court then asked the witness:

> "Would you agree that if the testimony comes on the record and establishes that the father who is now remarried and has a suitable home in Minneapolis and is maintaining a normal, whatever that means, family life with employment, that this would be better, you know, than [L. M. M.'s] present circumstances?"

The court also asked a witness, prior to any finding of deprivation:

> " . . . you're familiar, I assume, with the criteria that the Court is required to follow in a custody case; that is, the custody of the children is to be determined based upon what is in the best interest of the child or children rather than what is in the best interest of the parents?"

After the State, the guardian ad litem, and L. M. M. rested, the following interchange took place:

"[Counsel for D. A. M.]: I would like a little clarification on our procedure. In other words, as the last respondent then in this proceeding, we would be presenting our witnesses and that will conclude the hearing or is there rebuttal of some sort that the petitioner, or does the other respondent get a rebuttal, or is this a conclusion of the proceeding?

"THE COURT: What is your position, Mr. [Assistant State's Attorney, for petitioner in deprivation matter]?

"[Attorney for Petitioner]: We don't request rebuttal, Your Honor.

"THE COURT: The presentation will conclude with your matter, Mr. [Counsel for D. A. M.]."

The court thereupon took a recess and immediately thereafter, counsel for D. A. M. called his witnesses, including D. A. M.'s sister, mother, present wife, and D. A. M. Counsel for D. A. M. remarked to the court during examination of his first witness, "Your Honor, our purpose in this hearing is to have custody with the natural father [D. A. M.]." Much of the testimony elicited from these witnesses consisted of determining what kind of home D. A. M. and his present wife had to offer to T. M. M., and comparing that to the home L. M. M. had to offer. During the entire presentation by counsel for D. A. M. the State chose not to cross-examine.

Immediately after counsel for D. A. M. rested his case, counsel for L. M. M. requested that she be allowed to call L. M. M. as a witness. The court responded as follows:

"THE COURT: . . . I understand, of course, that the State's Attorney's Office representing the petitioner here would be the only party—that is, as the moving party they would be the party with the right to present rebuttal testimony.

"However, in this case since it has been agreed that we're in effect combining a motion to modify a judgment, the movant who is the defendant in this case, [D. A. M.], of course, would proceed first and then the plaintiff, [L. M. M.], would have the right to resist the motion."

The attorney for the petitioner then commented to the judge:

" . . . I think the testimony and all the evidence for the deprivation or nondeprivation has been had and I would ask for a finding upon whether or not there is deprivation. Doesn't that limit the available evidence upon the adjudication? Available evidence of dispositions are limited once we get a finding of deprivation or nondeprivation and we could save time, I think.

"THE COURT: Well, perhaps, but counsel representing the parties in a divorce case have agreed that the evidence received here is to be considered controlling on the motion too."

After L. M. M. finished testifying, the court gave the attorney for the petitioner an opportunity for final summation. He responded:

"First of all, there is one additional witness in the courtroom. Are you going for a finding of deprivation or nondeprivation now and then go to disposition or do you want to do it all in one shot?"

After final arguments, the guardian ad litem asked the court:

"Your Honor, are you asking for a recommendation for disposition in the custody hearing at this time?

"THE COURT: No.

"MR. KALASH: Very well.

"THE COURT: Just argument for deprivation."

The court then went on to find deprivation and asked the guardian ad litem for his recommendation as to disposition. The petitioner's attorney gave his recommendation, commenting that "after a finding of deprivation the child must be removed from the mother but we do not feel as of now that the father's home is a fit place for the child either." The guardian ad litem then stated:

"Insofar as the deprivation finding is concerned as guardian for the minor, it would be my recommendation that the entire case be disposed of with the custody matter . . ."

The court then stated its order for disposition and continued:

"I don't know if there is anything more to be covered in the order and as far as the motion for modification goes, it seems to me it does not need any attention by the Court at this time although the thought comes to me that visitation will be demanded and considering what [L. M. M.] has done in the past, the Court will strictly order that visitation to [L. M. M.] shall be governed strictly by times when [D. A. M.] is present."

Counsel for D. A. M. was asked for comment regarding the motion to modify the divorce decree, and responded that disposition to amend the decree would not be necessary. The motion to modify the divorce decree was then continued for one year and could be brought again after the period of legal custody with the Social Service Center.

We find that the two proceedings were clearly combined in one hearing, which resulted in great confusion throughout the proceeding and adversely affected L. M. M.'s ability to resist the petition alleging deprivation.

## II

Although it is not necessary for us to determine the second and third issues due to our holding above, the procedure used in this case merits further comment.

We have in the past interpreted the North Dakota Uniform Juvenile Court Act to require a two-stage hearing in deprivation proceedings. Sections 27–20–29 and 27–20–30 set forth the procedure in such cases. Section 27–20–29 provides:

"1. After hearing the evidence on the petition the court shall make and file its findings as to whether the child is a deprived child, . . . If the court finds that the child is not a deprived child . . . it shall dismiss the petition and order the child discharged from any detention or other restriction theretofore ordered in the proceeding.

"2. . . .

"3. If the court finds from clear and convincing evidence that the child is deprived . . . the court shall proceed immediately or at a postponed hearing to make a proper disposition of the case.

"4. . . .

"5. . . .

Section 27–20–30 sets forth the law regarding disposition of a deprived child, permitting the court to make alternative orders best suited to the protection and physical, mental, and moral welfare of the child.

The Act clearly provides for a two-stage hearing on petitions alleging deprivation. The first phase of the hearing is often referred to as the adjudicatory phase, wherein the only question for decision is whether the child is "deprived" within the meaning of Section 27–20–02, subsection 5. In the adjudicatory phase of the hearing, the primary issue is not what is in the best interests of the child, but rather whether there is clear and convincing evidence that the child is deprived. *Interest of R. D. S.,* 259 N.W.2d 636 (N.D.1977); *In Interest of M. L., supra.* It is only after the court has found the child to be deprived that the question of what disposition will best serve the interests of the child arises.

The second phase of the hearing, the dispositional phase, is to be conducted only after the court has first found the child deprived. If there is no such finding, the court "shall dismiss the petition" and no longer has jurisdiction of the case. *In Interest of M. L., supra.* Evidence concerning the suitability of one home for the placement of the child in comparison to another home is properly admissible only in the dispositional phase. And the rules of evidence do not apply in the dispositional phase of the hearing. See Rule 1101(d)(3), N.D. R.Ev.

■ Much of the confusion which existed in this case was due to the naming of both the custodial and the noncustodial parent as respondents in the petition alleging deprivation. Appellant contends that D. A. M. was not properly named as a respondent, and that Section 27–20–21, subsection 3, does not require the noncustodial parent to be a party to such a proceeding. Section 27–20–21, subsection 3, provides that the petition shall set forth plainly:

> "3. The names and residence addresses, if known to petitioner, of the parents, guardian, or custodian of the child and of the child's spouse, if any. . . . "

Appellant makes much of the disjunctive "or" used in the statute, arguing that since L. M. M. was the legal custodian at the time the petition was filed, it was not required that the noncustodial parent, D. A. M., be named as a respondent. However, both D. A. M. and L. M. M. are parents and as such each was properly named as a party under Section 27–20–22, subsection 1. To interpret the statute as urged by appellant would result in a denial of due process, to which D. A. M. is constitutionally entitled. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). D. A. M.'s interest in his child is substantial, and he is constitutionally and statutorily entitled to notice of the petition alleging deprivation of his child under our statutes, and to participate in the hearings, both adjudicatory and dispositional.

In a case such as this, where both the custodial and the noncustodial parents were properly named as parties under 27–20–22, subsection 1, the role of the noncustodial parent in the hearing is unclear. Section 27–20–27, subsection 1, N.D.C.C., provides that "A party is entitled to the opportunity to introduce evidence and otherwise be heard in his own behalf and to cross-examine adverse witnesses." Section 27–20–24, subsection 2, provides that "The state's attorney upon request of the court shall present the evidence in support of any allegations of the petition not admitted and otherwise conduct the proceedings on behalf of the state." This appears to limit the role of the noncustodial parent in the adjudicatory hearing.

■ In this case the State was not proceeding against the noncustodial parent respondent, D. A. M., nor attempting to show deprivation of T. M. M. based upon the care provided by D. A. M. The involvement of the noncustodial parent in deprivation hearings is due primarily to that parent's interest in the disposition of his child, and his role in the hearing should be limited to the issues involved in the particular hearing before the court.

It must also be emphasized that after a finding of deprivation the child does not necessarily have to be removed from the custody of his parent or custodian but may be permitted to remain in such custody subject to any conditions and limitations as the court prescribes. Sec. 27–20–30, subsec. 1–a.

■ We also observe that the petition in this matter was in the language of the statute defining a "deprived child" (27–20–02, subd. 5–a). Such conclusory language does not comply with the requirement of 27–20–21, which requires that a petition "set forth plainly: . . . The facts which bring the child within the jurisdiction of the court, . . . " Such facts are necessary in order to provide notice to respondents, so that they may prepare for the hearing and participate meaningfully in it. *Alsager v. District Court of Polk Cty., Iowa,* 406 F.Supp. 10 (S.D.Iowa 1975); *In Interest of M. L., supra.*

We reverse the determination that T. M. M. is a deprived child and remand for separated adjudication, and, if deprivation is adjudicated, dispositional hearings, without either being combined with a hearing on a motion to modify the divorce decree. Pending such hearings, the legal custody of T. M. M. in the Grand Forks County Social Service Center, with physical custody in the father, is continued unless modified by the juvenile court.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.